**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **MICHAEL HALL,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **2:15-CV-00476-KOB** |
| **ALABAMA POWER COMPANY,** ] | |
| **A SOUTHERN COMPANY,** ] | |
| ] | |
| **Defendant.** ] | |
| ] | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Michael Hall has alleged that Alabama Power Company engaged in disparate treatment on the basis of race in declining to hire him for several positions. This matter is before the court on Defendant Alabama Power Company's "Motion for Summary Judgment" (Doc. 25) and "Motion to Strike the Declaration of Traci L. Wiggins Offered in Opposition to Defendant's Motion for Summary Judgment." (Doc. 36).

For the reasons stated in this Memorandum Opinion, the court will **DENY** Alabama Power's Motion to Strike and will **GRANT** Alabama Power's Motion for Summary Judgment.

**I.      Standard of Review**

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

1

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden shifts to the non-moving party to produce sufficient favorable evidence "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

When ruling on a motion for summary judgment, the court should view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The evidence of the non-moving party "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted).  This standard exists because "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255).

2

After both parties have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

## II.   Procedural History

Plaintiff Michael Hall filed an EEOC charge on May 15, 2014, alleging that Defendant Alabama Power Company had discriminated against him on the basis of his race in not hiring him for several positions. Mr. Hall brought this lawsuit against Defendant Alabama Power Company on March 20, 2015. Mr. Hall asserted in his Complaint several causes of action under Title VII and § 1981 for racial discrimination in hiring. In his "Opposition to the Defendant's Motion for Summary Judgment," Mr. Hall has only argued a disparate treatment theory of discrimination.

Alabama Power Company moved for summary judgment on each of Mr. Hall's claims on February 4, 2016. The parties have fully briefed that Motion.

## III.   Facts

Michael Hall is an African-American male. Mr. Hall alleges that he was discriminated against on the basis of his race when he applied to and was not hired for several positions within the Western Division of Alabama Power Company. Mr. Hall applied and was not chosen for approximately seven positions in the Western Division of Alabama Power between 2008 and May 15, 2014. The parties have narrowed the scope of Mr. Hall's claims, however, and only three positions are now at issue in this case: three Power Delivery Utility Assistant positions within the Western Division of Alabama Power that were opened in 2011, 2012, and 2014. Mr. Hall was hired by Alabama Power as a Utility Assistant in the Supply Chain department on July

11, 2014.

The Power Delivery Utility Assistant position is an entry level position that assists in the construction and maintenance of electrical distribution lines. The job description for this position states that "[e]xperience in a physically demanding work environment, and ability to work with all types of tools is desired." (Doc. 27-4 at 34). The qualifications for the Power Delivery Utility Assistant position are: (1) a high school diploma or equivalent with a two-year technical degree preferred; (2) two years manual labor, construction, maintenance, electrical or working on heavy equipment preferred; (3) ability to rotate locations while training; (4) ability to obtain a CDL; (5) ability and desire to work safely and be ethical; (6) ability to work at heights up to 100 feet; (7) ability to perform physically demanding tasks outdoors in various conditions and ability to bend, kneel, stoop and stand for long periods of time; (8) ability to operate equipment; and (9) availability for day shift work (along with overtime, call out, weekends and holidays as required). Additionally applicants must be at least 18 years old, must possess a valid driver's license, and must be available to work overtime, call out, weekends, and holidays as required.

Michael Hall graduated from high school in 2005 and attended the University of North Alabama from 2005 to 2008 but did not graduate. He received his bachelor's degree in business from Faulkner University in approximately 2012.

Between high school and being hired by Alabama Power in 2014, Mr. Hall worked at Arby's; as an order selector at Amerisource Bergen; as an overnight stocker at Books-A-Million; as an order selector for Swanson Services; as an order selector, then line manager for Alabama Crown; as an order selector at Dollar General; and as a detail specialist cleaning and washing cars for CarMax. In his positions as an order selector at Dollar General and Alabama Crown, Mr.

Hall drove a forklift and operated a cherry picker to move containers and pull items from the warehouse to prepare them for shipping. Mr. Hall had no experience in construction, tree services, any position requiring work at heights or out of a truck, or any job that required him to be outside. Mr. Hall also had not worked in any position that required him to use tools such as saws or hammers.

A.     <u>Power Delivery Utility Assistant – 2011</u>

The first position at issue in this case is the Power Delivery Utility Assistant Position for which Mr. Hall applied in September 2011. Alabama Power informed Mr. Hall that he was not selected for this position September 8, 2011.

More than 500 people applied for this position. Alabama Power contends that it used a screening method for this position to screen applicants from consideration based on their residential addresses. Alabama Power states that it screened out 163 applicants, one of whom was Mr. Hall. Alabama Power asserts that based on Mr. Hall's residential address at the time he applied, he was deemed to be outside the Western Division and to be a better candidate for the Birmingham Division Power Delivery Utility Assistant position for which he had simultaneously applied. Of the 163 candidates who were screened out, 106 were Caucasian, 50 were African-American, two were Hispanic/Latino, one was Asian, two were of more than one race, and two were of unknown race. Alabama Power hired six individuals for this position: five Caucasians and one Latino. These individuals were hired between January 27, 2012 and October 8, 2012.

Mr. Hall disputes that Alabama Power uses residential addresses as a screening tool for applicants. Mr. Hall asserts that his father, Donald Bivins, has worked in the Western Division for years while living in Alabaster and Montevallo, both of which are outside of the Western

Division's geographical range. Mr. Hall also contends that when he applied for this position, he was told that he just had to be able to move into the Division if he was chosen.

As part of his application for the Power Delivery Utility Assistant position with the Birmingham Division, Mr. Hall took Alabama Power's Physical Abilities Test, which any candidate must pass to be hired for the Power Delivery Utility Assistant position. Mr. Hall failed this test on November 9, 2011. Candidates who failed the test could retake it after 45 days. Mr. Hall took and passed the Physical Abilities Test on May 9, 2012.

B.    Power Delivery Utility Assistant – 2012

Mr. Hall applied for a Power Delivery Utility Assistant Position in the Western Division again on March 5, 2012. Mr. Hall interviewed for the position. Following the interview, the selection committee members individually wrote down their top candidates. Mr. Hall was not on any of the selection committee members' lists of top candidates. All five members of the selection committee were Caucasian. Alabama Power informed Mr. Hall on May 30, 2012 that he was not selected for the position.

Four individuals were hired for the position: Jonathan Mathis, Wade Fondren, Josh Taylor, and Randy Burton, all of whom are white males. These individuals were hired in June or July 2012. Jonathan Mathis had experience working with his hands and with tools during his time working for Mercedes-Benz and Burkes Mechanical. Wade Fondren had worked as a heavy equipment operator on line clearance and tree removal, and as a welder and pipe fitter. Josh Taylor was a special operations intelligence analyst for the U.S. Army in Iraq, and had worked as a loading coordinator and a survey crew roadman. Randy Burton had ten years of experience in the construction field as a pipe fitter, shop foreman, and crew lead. The reasons Alabama Power

6

gave for hiring these individuals were work experience and "fit into crew." Alabama Power contends that "fit into crew" meant aptitudes with the tools and practices that were used by the crew.

C.    Power Delivery Utility Assistant – 2014

Mr. Hall also applied for a Power Delivery Utility Assistant position in the Western Division in 2014. Mr. Hall interviewed for this position on May 1, 2014, along with eleven other candidates. Three of the candidates who were interviewed were African-American. The selection committee was comprised of one African-American and two Caucasians. Following the interviews, the selection committee members individually listed their top candidates for potential selection. Mr. Hall was not on any of the selection committee members' lists of top candidates.

Alabama Power hired three of the candidates who interviewed that day: Wes Street, an African-American; Justin Rigsby, a Caucasian; and Corey Choquette, a Caucasian. All three successful candidates were on each of the committee members' lists of top five or six candidates. Wes Street had previous experience working with the installation, service, and troubleshooting of video, internet, and phone service with power poles. Justin Rigsby had worked in the tree services industry, which required him to work at heights and outside. Corey Choquette previously worked as a tree trimmer and landscaper.

D.    Utility Assistant in Supply Chain

On July 11, 2014, Mr. Hall was hired as a Utility Assistant in the Supply Chain department, rather than in Power Delivery, and in the Birmingham Division, rather than in the Western Division.  Mr. Hall admitted in his deposition that his prior work experience was more related to the Supply Chain Utility Assistant position than the Power Delivery Utility Assistant

position because the Supply Chain position was "warehouse related." (Doc. 27-1 at 44:6-17).

E.     Open Nature of Positions at Alabama Power

Positions within Alabama Power can remain open for a long period of time. For example, for a position that opened in May 2011, Alabama Power hired four people in September 2011, five people in January 2012, and two people in June and July 2012.

Mr. Hall contends that Alabama Power would sometimes create a "roster" out of a candidate pool and go back to the list from the previous announcement when other positions became available in the division. Alabama Power disputes that it maintains rosters. Emily Dean, the talent acquisition manager for Alabama Power Company, stated in her deposition that she had not heard the term roster before, but indicated that if an impressive pool of candidates existed, Alabama Power "might go back to those originally qualified individuals from a previous posting and reconsider them when opportunities come available within that division." (Doc. 27-2 at 77:3-7).

On May 6, 2014, Nancy Potts, an Alabama Power employee, emailed another applicant, Robert Kidd, to tell him that he had not been selected for a Power Delivery Utility Assistant position. When Mr. Kidd questioned whether he had made the roster, Ms. Potts replied that "[t]he decision was made not to have a roster since we don't see any positions becoming available in the near future. If one were to become available, your application would be reviewed." (Doc. 27-2 at 136).

F.     Alabama Power's Interview Process

An industrial organizational psychologist evaluated the October 31, 2012 version of the Utility Assistant interview procedure and recommended its use in the hiring process. The

psychologist's report concluded that the interview questions met professional standards for interviewing and for measuring skills and traits relevant to the Utility Assistant position. Though the record does not include a precise implementation date, Alabama Power EEO and HR compliance coordinator Regina Thompson testified that these questions were implemented during the next round of interviews after October 31, 2012.

Alabama Power's standard was to have selection committee members choose from the approved questions and to ask the same questions of every candidate interviewed for a position. In the report, questions were categorized by topics such as, "Adaptability to Physical Job Demands / Adaptability to Pressure," "Problem Solving / Mechanical Aptitude / Attention to Detail," and "Safety Orientation." The departmental interview records for the positions at issue here include corresponding "Dimension" categories for each question, i.e., "Adaptability," "Problem Solving," "Mechanical Aptitude," and "Safety." Interviewers were required to ask each candidate at least one question from each category.

G.      Bivins's Diversity Initiatives

Donald Bivins is an African-American employee of Alabama Power and Michael Hall's father. Mr. Bivins began working for Alabama Power in 1988 and moved to the Western Division in 1993. In 2014, Mr. Bivins and other African-American Alabama Power employees started a Diversity Committee to address the lack of African-Americans working in Power Delivery in the Western Division. Mr. Bivins explained in his deposition, "[C]o-workers and I was getting together, and we was looking around, and we didn't see why we didn't have any black helpers or UA's, and we looked around also, and we noticed that the blacks ourselves were a small number. So I started thinking, and we got a committee together." (Doc. 32-1 at 13:18-

14:2). Mr. Bivins also testified that he was concerned because his white coworkers could get their relatives hired in the Western Division, but he and other African-American employees could not.

In January or February 2014, Mr. Bivins created a document called "The Hiring of Michael Hall." (Doc. 32-1 at 40-43). In this document, Mr. Bivins explained his observations about Mr. Hall's attempts to be hired by Alabama Power and documented the discussions he had with members of Alabama Power management Harry Gabriel and Greg Long. Mr. Bivins contends that in an April 16, 2014 meeting with Harry Gabriel and Avery Pruitt, Mr. Bivins's supervisor, Harry Gabriel said, "I don't think I will be interviewing Michael in this division because of the way you reacted to those two situations." (Doc. 32-1 at 42). The "two situations" were Mr. Bivins going to corporate about the lack of African-Americans in the Division and the promotion of Jim Mullinex, a Caucasian, over Terrell Walton, an African-American who Bivins believed was more qualified than Mullinex. Mr. Bivins also testified in his deposition that in a 2014 meeting Harry Gabriel admitted that it had been years since Alabama Power had hired any African-Americans in Power Delivery in the Western Division.

Mr. Bivins and the Diversity Committee created another document entitled "Hiring/Promotion of African American [sic] in Western Division." (Doc. 32-1 at 44-48). According to this document, as of December 31, 2013, the Power Delivery department in the Western Division had 194 total employees, 176 of which were Caucasian and 18 of which were African-American. Mr. Bivins, however, admitted in his deposition that he and the other committee members created this list based on their recollections of who was employed, not by looking at any company records.

10

**IV.    Discussion**

    A.    <u>Motion to Strike</u>

Alabama Power Company has moved to strike the "Declaration of Traci L. Wiggins" (Doc. 32-2), offered in support of Mr. Hall's "Opposition to Alabama Power's Motion for Summary Judgment." (Doc. 31).

Ms. Wiggins is a paralegal for the law firm of Wiggins, Childs, Pantazis, Fisher & Goldfarb. In her Declaration, Ms. Wiggins states that she has reviewed the rosters of applicants for the positions with Alabama Power to which Mr. Hall applied. Ms. Wiggins then provides a breakdown of the racial composition of the applicant groups, which includes percentages representing the number of applicants in each racial group. Ms. Wiggins also provides summaries of the chosen applicants' work experience and percentages representing the racial composition of the employees in the Power Delivery Department of the Western Division of Alabama Power Company.

Alabama Power moved to strike Ms. Wiggins's Declaration on the basis that: (1) the Declaration is not based on Ms. Wiggins's personal knowledge, and (2) the statistics contained in Ms. Wiggins's Declaration are inaccurate. Mr. Hall did not file a response in opposition to Alabama Power's Motion to Strike.

The court declines to strike Ms. Wiggins's Declaration on these grounds. Federal Rule of Evidence 1006 provides that a party

        may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may

11

order the proponent to produce them in court.

*See also Parrott v. PNC Bank, Nat. Ass'n*, 986 F. Supp. 2d 1263 (N.D. Ala. 2013) (quoting

*Guijosa–Silva v. Wendell Roberson Farms, Inc.*, 7:10–CV–17 HL, 2012 WL 860394 at *3 (M.D.

Ga. Mar. 13, 2012) (observing that "[s]ummaries have been found admissible on summary

judgment where 'exhibits are voluminous and it would be inconvenient for the Court to take the

time to review, compare, and analyze each document.'"). Ms. Wiggins has merely summarized

voluminous evidence that would be inconvenient for the court to review and analyze. The

documents she has reviewed and summarized include rosters of applicants for the positions in

question, which indicate the race of each applicant; the applications and resumes of those

individuals who were chosen for the positions in question over Mr. Hall; and a list of employees

working in Power Delivery in the Western Division, along with each employee's race.

Each of these documents was produced by Alabama Power. Alabama Power has not

moved to strike these exhibits or  argued that these exhibits are in any way objectionable.

Therefore, Ms. Wiggins's Declaration is admissible, and the court will **DENY** the Defendant's

Motion to Strike Ms. Wiggins's Declaration.

The court notes, however, that several of the statistics Ms. Wiggins offers in her

Declaration are incorrect. For example, in paragraph two of her Declaration, Ms. Wiggins

incorrectly states that 334 out of 506 applicants is 64%, when it is actually 66%. Ms. Wiggins

also states that 6 of 506 applicants is .011%, when it is really 1.1% and that 3 of 506 applicants is

.005%, when it is really 0.59%. Alabama Power has presented to the court other inaccuracies

contained in Ms. Wiggins's Declaration. The court will consider that some of the math

calculations in Ms. Wiggins's Declaration are inaccurate.

12

B.    <u>Motion for Summary Judgment</u>

Alabama Power argues that it is entitled to summary judgment on Hall's claims for three

reasons: (1) some of Mr. Hall's claims are time-barred under the applicable statute of limitations;

(2) Mr. Hall cannot establish the elements of a *prima facie* case of race discrimination; and (3)

even if Mr. Hall can establish his *prima facie* case, he cannot show that Alabama Power's

reasons for choosing other applicants were a pretext for discrimination.

1.    Statute of Limitations

Alabama Power contends that Mr. Hall's claims related to the Power Delivery Utility

Assistant positions he applied for in 2011 and 2012 are barred by the applicable statute of

limitations. The court agrees.

To recover under Title VII, a plaintiff must file a charge with the EEOC "within one

hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. §

2000e-5(e)(1). "A discrete retaliatory or discriminatory act 'occurred' on the day that it

'happened.' A party, therefore, must file a charge within . . . 180 . . . days of the date of the act or

lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110

(2002).

As to § 1981, a two-year statute of limitations period applies to failure to hire claims. *See,*

*e.g.*, *Edwards v. Nat'l Vision, Inc.*, 946 F. Supp. 2d 1153, 1170–71 (N.D. Ala. 2013) (explaining

that claims cognizable under § 1981 prior to the 1991 amendment, such as Mr. Hall's failure to

hire claims, are subject to a two-year limitations period in Alabama).

Alabama Power informed Mr. Hall that he had not been selected for the 2011 Power

Delivery Utility Assistant position on September 8, 2011. As to the 2012 Power Delivery Utility

Assistant position, Alabama Power informed Mr. Hall that he had not been selected on May 30, 2012. Mr. Hall did not file his EEOC charge until May 15, 2014. Because he did not file this charge within 180 days of the alleged discriminatory acts, namely Alabama Power's decision not to hire him for the Power Delivery Utility Assistant positions on September 8, 2011 and May 30, 2012, Mr. Hall's claims for these two positions are untimely under Title VII.

Mr. Hall's claims under § 1981 are also barred by the applicable statute of limitations. Mr. Hall filed his Complaint on March 20, 2015, more than two years after Alabama Power notified him that he had not been selected for both the 2011 and 2012 Power Delivery Utility Assistant positions.

Mr. Hall argues that the doctrine of equitable tolling applies to his claims and prevents the statute of limitations from being a bar to his claims. Mr. Hall contends that equitable tolling applies for two reasons. First, Mr. Hall contends that the process used to fill vacancies at Alabama Power was open-ended, so Mr. Hall did not know for certain when all positions were filled. Second, Mr. Hall argues that he did not know who received the positions over him at the time he was rejected, so he lacked the knowledge to prove a case for disparate treatment.

The time for filing a discrimination charge does not begin to run "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights." *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975);[1] *see Hill v. MARTA*, 841 F.2d 1533, 1545 (11th Cir. 1988) (the 180 days begins running from the date the employee knows or

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

reasonably should know that he or she has been discriminated against).

However, "[i]t is not necessary for a plaintiff to know all the facts that support his claim in order to file a claim." *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir. 1988)). To apply equitable tolling, "the facts must show that, in the period more than 180 days prior to filing [the] complaint[] with the EEOC, [the plaintiff] had no reason to believe that [he was the] victim[] of unlawful discrimination." *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993).

Mr. Hall first argues that equitable tolling is justified in the instant case because the process of applying for positions with Alabama Power was fairly open-ended and candidates could be placed into a pool "from which new hires could be selected for an undetermined and lengthy amount of time." (Doc. 31, at 16). The parties disagree as to whether Alabama Power maintains "rosters" of candidates for later consideration. However, even if Alabama Power does maintain rosters and does occasionally consider previous applicants for new positions, the court finds that this reconsideration of applicants is insufficient to justify equitable tolling. The parties agree that Hall was informed on September 8, 2011 and May 30, 2012 that he had not been selected for the positions in question. Whether Alabama Power retained Mr. Hall's information and considered him for later openings is irrelevant to its failure to hire him for those two positions. Mr. Hall experienced an allegedly discriminatory act on the dates that he was informed he did not receive the positions at issue.

To hold any differently would have the effect of stating that <u>no</u> time bar exists when applicants who applied to one position are considered for a subsequent opening. Employees could simply allege that they thought they might have been on a roster and did not know that they

had been discriminated against until much later than the date that they were rejected by the employer. The court declines to adopt such a position.

Mr. Hall next argues that equitable tolling applies to his claims because he did not know about the individuals who received the positions instead of him until 2014, and he did not know about the lack of African-Americans in the Western Division until January or February 2014. Therefore, Mr. Hall contends that he "lacked the knowledge to prove an individual case of disparate treatment" until much later than the time he was informed he was not selected. (Doc. 31, at 17).

First, the 180-day period for filing a charge does not begin to run on the date that the plaintiff *knows* all of the facts to support his claim; the 180-day period begins to run on the date that the facts to support a claim "were apparent or *should have been apparent* to a person with a reasonably prudent regard for his rights." *Reeb*, 516 F.2d at 931 (emphasis added). The court finds that the facts giving rise to Mr. Hall's discrimination claim should have been apparent to him as of the dates on which he was informed that he had not been selected for the positions.

Although Mr. Hall now asserts that he did not have the information necessary to prove his claims until he knew who had been hired for the positions, Mr. Hall testified at his deposition that his belief that he had been discriminated against was not based on whether the people who received the positions over him were Caucasian or African-American. *See* (Doc. 27-1, 32:23-34:1).

Mr. Hall also testified that he thought the interview for the 2012 position may have been discriminatory because it was conducted by an all-white panel. (Doc. 27-1 at 96:5-19).

Given Mr. Hall's awareness of the racial composition of the interview panel at the time

he was told he had not been selected and Mr. Hall's beliefs that Alabama Power's hiring practices were discriminatory, the court finds that Mr. Hall was aware, or should have been aware, of the facts supporting his claim on the dates that he was rejected for each position. Even if Mr. Hall did not find out precisely who was hired for each position until some time in 2014, Mr. Hall stated that he did not rely on who was hired for his belief that he was discriminated against. Accordingly, the court finds that equitable tolling is not warranted in this case and that Mr. Hall's claims for both the 2011 and 2012 Power Delivery Utility Assistant positions are barred by the applicable statute of limitations.

> 2.    Hall's *Prima Facie* Case as to the 2011 Position

Alternatively, the court finds that even if Mr. Hall's claims as to these positions were not barred by the applicable statute of limitations, Mr. Hall's claim as to the 2011 Power Delivery Utility Assistant position would fail because Mr. Hall cannot establish his *prima facie* case with respect to this position.

Showing discrimination under Title VII and § 1981 requires proof of the same legal elements. *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985). "[A]ny racial discrimination claim based on disparate treatment requires a prima facie showing that the employer acted with discriminatory intent." *Hill*, 841 F.2d at 1538. A plaintiff may establish a *prima facie* case of discriminatory intent in one of two ways. "He may present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude. Or, in the absence of direct evidence of discrimination, he may rely on the combination of factors set forth in *McDonnell-Douglas Corp. v. Green* . . . ." *Id.* at 1539 (citations omitted).

Because Mr. Hall has no direct evidence of discriminatory intent, the court applies the burden-shifting framework of *McDonnell Douglas* to the instant case. Under the *McDonnell Douglas* framework, "the plaintiff must first create an inference of discrimination through his prima facie case." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

To establish his *prima facie* case, Mr. Hall must show: "(i) he[] belonged to a protected class; (ii) he[] was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he[] was rejected; and (iv) the position was filled with an individual outside the protected class." *Vessels*, 408 F.3d at 768 (citing *McDonnell Douglas*, 411 U.S. at 802).

Mr. Hall cannot establish his *prima facie* case for the 2011 Power Delivery Utility Assistant position because he is unable to show that he was qualified for that position. At the same time as Mr. Hall applied for this position, he applied for a different Power Delivery Utility Assistant position within the Birmingham Division. As part of his application for the Birmingham Division, Mr. Hall took the Physical Abilities Test. The parties agree that candidates <u>must</u> pass the Physical Abilities Test to be hired for any Power Delivery Utility

18

Assistant position. Mr. Hall failed the Physical Abilities Test on November 9, 2011. This failure demonstrates that Mr. Hall was not qualified for all Power Delivery Utility Assistant positions in all divisions at that time.

Alabama Power contends that it used a screening method to screen Hall out of consideration for the 2011 position based on his residential address at the time. Hall disputes the fact that Alabama Power used residential addresses as a screening address. However, the court finds this fact immaterial. Even if Alabama Power had not screened Mr. Hall out based on his address, he would have been unqualified for the position because he failed the Physical Abilities Test. Because Mr. Hall was not qualified for the position, he cannot establish his *prima facie* case for this position.

Mr. Hall argues that his failure of the Physical Abilities Test did not disqualify him from consideration for this position. Mr. Hall points to the fact that employees who fail the Physical Abilities Test could retake the test after 45 days. Mr. Hall contends that he could have been considered for the position at that point in time. While it is true that Mr. Hall could have retaken the Physical Abilities Test after 45 days, he did not retake and pass the test until May 9, 2012. Further, no evidence exists to show that when a candidate fails the Physical Abilities Test, he may be placed back into the candidate pool and reconsidered for the position once he passes the test. The court will not engage in such speculation. Accordingly, the court finds that Mr. Hall's argument lacks merit and that Mr. Hall has failed to establish his *prima facie* case as to this position.

 3.   Hall's *Prima Facie* Case as to the 2012 and 2014 Positions

As to the remaining two positions at issue, the court questions whether Mr. Hall can

19

establish his *prima facie* case. Regarding his qualifications for the positions, Mr. Hall had no experience in construction, tree services, any position requiring work at heights or out of a truck, or any job that required him to be outside. Mr. Hall also had not worked in any position that required him to use tools such as saws or hammers. Mr. Hall testified in his deposition that his prior work experience was more related to the Supply Chain Utility Assistant position for which he was hired in 2014 than to the Power Delivery Utility Assistant positions because the Supply Chain position was "warehouse related." (Doc. 27-1, 44:6-17).

These concerns aside, for purposes of this Opinion, the court assumes without deciding that Mr. Hall was qualified for these positions and has established his *prima facie* case with respect to the 2012 and 2014 Power Delivery Utility Assistant positions. However, the court finds that, as it will set out in the following section, even if Mr. Hall has established his *prima facie* case as to these positions, his claims fail because he cannot demonstrate that Alabama Power's reasons for hiring other candidates were pretextual.

4.     Evidence of Pretext

Under the *McDonnell Douglas* framework, once Mr. Hall establishes his *prima facie* case, the burden shifts to Alabama Power to articulate legitimate, non-discriminatory reasons for selecting other individuals over Mr. Hall. *See Vessels*, 408 F.3d at 767. Alabama Power has given the non-discriminatory reasons of interview performance and work experience as the reasons it selected the individuals it hired for the 2012 and 2014 Power Delivery Utility Assistant positions. For both the 2012 and 2014 positions, Alabama Power used a selection committee whose members interviewed candidates and then listed their top choices based on their interviews and relevant work experience. Mr. Hall interviewed for both positions, but none of the

committee members listed Mr. Hall as one of their top choices.

Because Alabama Power has articulated non-discriminatory reasons for its hiring decisions, the burden shifts back to Mr. Hall to show that Alabama Power's given reasons were a pretext for discrimination. Mr. Hall sets forth three reasons why Alabama Power's proffered explanations are pretextual.

First, Mr. Hall alleges that statistical evidence showing the racial demographics of the Western Division Power Delivery department and the racial demographics of applicants for the three Power Delivery positions demonstrates Alabama Power's intent to discriminate. The only "statistical" evidence the court has before it is that derived from the applicant rosters for the 2012 and 2014 positions and from the employee roster for the Western Division Power Delivery department. These rosters list the names and races of the applicants and employees, respectively. Plaintiff did not employ a statistician to determine whether the racial percentages in these rosters are statistically significant to indicate discrimination.

Under certain circumstances, statistical evidence of hiring practices may be used to show pretext. *See McDonnell Douglas*, 411 U.S. at 805. However, statistics showing mere racial distributions are meaningless without an analytical foundation. *See Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991). Though "the (racial) composition of defendant's labor force [may] itself [be] reflective of restrictive or exclusionary practices[,] . . . such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas*, 411 U.S. at 805 n.19 (citation and quotations omitted).

The rosters here do not provide any way to compare similarly situated individuals. *Cf.*

*Cooper v. Southern Co.*, 260 F. Supp. 2d 1258, 1270 (N.D. Ga. 2003), *aff'd*, 390 F.3d 695 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) (finding as analytically deficient statistics comparing the promotion rate of employees within the same pay grade who performed similar job functions, without classifying employees according to position and location; accounting for differences in skills and experience; distinguishing between kinds of promotions; or specifying which employees applied for promotions). That more Western Division Power Delivery employees are Caucasian than are African-American does not account for differences in education, experience, and other qualifications; positions; date of hire; procedures and individuals involved in hiring; or applicant pools for each position. Similarly, the races of applicants for the 2012 and 2014 positions are irrelevant without information about the applicants' qualifications and whether they were subjected to screening procedures in the course of hiring. The court cannot infer pretext from percentages without any analysis of the significance of those percentages, particularly since Alabama Power has proffered non-discriminatory reasons for refusing to hire Mr. Hall.

Second, Mr. Hall contends that he "was equally or more qualified than the Caucasian employees who received the position" over him. (Doc. 31, at 19). His own opinion, however, does not support a conclusion that Mr. Hall was more qualified that the individuals Alabama Power hired. Mr. Hall also admitted in his deposition that his prior work experience was more related to the Supply Chain position for which he was ultimately chosen than to the Power Delivery Utility Assistant positions. Further, even if Mr. Hall were equally as or more qualified than the candidates chosen, that fact alone does not establish a discriminatory motive on the part of Alabama Power.

"[E]vidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (citation omitted). However, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997); *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

For a plaintiff to prove pretext by showing that he was more qualified than the person hired, the plaintiff must show that he was "substantially more qualified." *Lee*, 226 F.3d at 1254; *see also Cooper*, 390 F.3d at 732 (citations and quotations omitted) ("[D]isparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.").

Mr. Hall has failed to show that he was substantially more qualified than the candidates chosen for the positions in question. As to the 2012 position, the four candidates who were chosen had experience working with tools at Mercedes-Benz and Burkes Mechanical; working as a heavy equipment operator on line clearance and tree removal, a welder, and a pipe fitter; working as a special operations intelligence analyst for the U.S. Army in Iraq, a loading coordinator, and a survey crew roadman; and working in the construction field as a pipe fitter,

23

shop foreman, and crew lead. As to the 2014 position, the three candidates who were chosen had experience working with the installation, service, and troubleshooting of video, internet, and phone service with power poles; working in the tree services industry; and working as a tree trimmer and landscaper.

Mr. Hall, conversely, had experience working at Arby's; as an overnight stocker; as an order selector; as a line manager; and as a detail specialist. Hall had no experience in construction, tree services, any position requiring work at heights or out of a truck, or any job that required him to be outside. Mr. Hall also had never worked with tools, other than a forklift and cherry picker. The court concludes that, based on Mr. Hall's limited and mostly unrelated experience, a reasonable jury could not find that Mr. Hall was substantially more qualified for the Power Delivery Utility Assistant positions than the individuals who were chosen. A reasonable employer could determine–and find highly significant–that Mr. Hall's work experience made him less qualified than the applicants who were hired.

Third, Mr. Hall states that the Alabama Power interview process was subjective, which in and of itself evidences a discriminatory motive. However, an employer's choice to make hiring decisions based on subjective criteria does not, without more, indicate pretext. *See Chapman v. Ala. Transp.*, 229 F.3d 1012, 1033 (11th Cir. 2000) ("A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason . . . . [S]ubjective evaluations of a job candidate are often critical to the decisionmaking process . . . ."). An employer's articulation of its subjective reason for declining to hire an individual must be "clear and reasonably specific." *Burdine*, 450 U.S. at 258.

Although Alabama Power's Utility Assistant interview procedure did involve subjective

rankings of candidates by members of a selection committee, the process was otherwise objective. An industrial organizational psychologist extensively evaluated Alabama Power's Utility Assistant interview procedure and recommended its use in the hiring process. The psychologist's report shows that the interview questions were carefully phrased and categorized to assess factors relevant to the Utility Assistant position. The interviewers could not ask whatever questions they wished, but were required to choose from a list of predetermined questions and to ask at least one question from each category. The court finds that Alabama Power has articulated a clear and reasonably specific reason for declining to hire Mr. Hall in stating that he did not perform well in the company's standardized interview process.[2]

Thus, because Hall's three articulated indicia of pretext fail to create genuine issues of material fact, Alabama Power is entitled to judgment as a matter of law on Hall's claims regarding the 2012 and 2014 positions.

## IV. Conclusion

Because the court finds that the Declaration of Traci L. Wiggins is a permissible summary of admissible evidence, the court **DENIES** Defendant's Motion to Strike Ms. Wiggins's Declaration.

The court finds that Plaintiff's claims as to the 2011 and 2012 positions are barred by the applicable statute of limitations; that alternatively Plaintiff cannot establish his *prima facie* case as to the 2011 position and has not established a genuine dispute of material fact on the issue of

---

[2] The court also notes Harry Gabriel's alleged statement to Donald Bivins that "I don't think I will be interviewing Michael in this division because of the way you reacted to those two situations." Contrary to this assertion, Alabama Power did interview Mr. Hall for a Western Division Power Delivery Utility Assistant position in May 2014, but Mr. Hall was not hired because he objectively did not perform well in that interview.

pretext as to the 2012 position; and that Plaintiff has not established a genuine dispute of material fact on the issue of pretext as to the 2014 position. Accordingly, the court **GRANTS** Defendant's "Motion for Summary Judgment."

The court will enter a separate final Order along with this Opinion.

**DONE** and **ORDERED** this 28th day of September, 2016.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE